## Commonwealth ex rel. Ludlam v. Miller et al.

*Parent and child—Custody of child—Grandparents—Rights of father.*

1. Upon *habeas corpus* for the custody of a minor child, where it appears that the child is of such nervous condition that it might be injurious to her mental and physical well-being to take her away from the grandparents, who have been caring for her, the petition of her father for her custody will be refused.

2. The welfare of the child is paramount to the interest and right of a parent in all disputes as to its custody.

Habeas corpus. C. P. Dauphin Co., Jan. T., 1922, No. 567.

*Spencer Gilbert Nauman* and *James Hay Simms*, for petition.

*W. Justin Carter*, contra.

Fox, J., May 1, 1922.—This writ issued on a petition of the father for the custody of his child, Helen Frances Ludlam, aged about three and one-half years, now in the possession of its maternal grandparents, George Miller and Harriet Miller.

The relator resides in Woodland, New Jersey, and the respondents in the City of Harrisburg, Pennsylvania.

The relator was married to Helen Frances Miller, daughter of the respondents, in the year of 1915, to whom the child was born on Aug. 14, 1918, at the home of the relator in West Philadelphia; the mother died when the child was about seven weeks old, on Oct. 11, 1918.

Immediately upon the death of the mother, the child was brought by her aunt, with the consent of the relator, to the home of her grandparents, the respondents, in the City of Harrisburg, and has been there ever since. No definite agreement was made between the grandparents and their son-in-law as to the custody of the child; the child was left there by the father, who contributed at the rate of about $5 per week from the time it was received by the grandparents until about June, 1921, which money was accepted by the respondents. The father, immediately after the location of this child in Harrisburg, would visit the home where it was monthly or perhaps more frequently, but later on the visits grew less frequent, and in March, 1921, he paid his last visit. There was no differences between the parent and the grandparents and no reason is given why he ceased visiting his child. He gives as the reason for discontinuing payments for the support of the child the fact that he was out of employment for two and one-half or three months from June 1, 1921, but at the time he was the owner of an undivided one-half interest in real estate and had invested a little over $500 in a certain stock, and had been earning, prior to his being out of work, about $35 per week. He was married again in October, 1921, and went to housekeeping with his newly-wedded wife, who is willing to have the father bring the child to their home and promises to properly care for and look after the child. Prior to the time of his second marriage, the relator lived with his parents and sister in West Collington, and, so far as we know, was supporting no one but himself. He

2 D. & C.

Commonwealth ex rel. Ludlam *v.* Miller et al.

is a man of good reputation, and is an excellent mechanic and has a good position.

The grandparents, in whose care the child was placed and left by the relator, are persons of good moral character, church-going and thrifty people. They have well cared for the infant and devoted much time and attention to it in its most tender years. They are fully able to properly and adequately supply its wants and needs and to look after its future welfare, and they promise to continue to do this for the child, without cost to the father, if she may be left in their possession.

After the father of the child discontinued sending money to the grandparents for the support of the child, the respondents said nothing to him about it, but continued to provide and care for her just as they had done when he did send money to them. The father made no explanations to them of his conduct, and makes none now, except that he was out of employment from June until about September, 1921.

By reason of the father ceasing to visit the child in March, 1921, and to make contributions towards its support, or even offering to make any after June, 1921, up to the date of this petition, we do not think the relator displayed that paternal interest and duty that is natural and usually to be expected. We think it amounted to a voluntary surrender of the child by him to the grandparents, and this fact receives from us much consideration in the disposal of this case.

The child has been and is in a nervous condition, and it might be injurious to her mental and physical condition should she be abruptly taken away from her grandparents, who have tenderly cared for her from the time she could not smile upon them for so doing to the present day, and to whom for this tender and loving care she has become, and now is, very much attached.

We believe the child would be well treated and sufficiently provided for and her welfare carefully looked after by either the relator or the grandparents.

The general rule in Pennsylvania, which has been established by a long line of decisions, is that the welfare and best interest of the child are the controlling elements in the determination of all disputes as to the custody of the child. The common law recognized a superior right of the father to the custody of his minor child, but this has been very materially modified. It is unnecessary to refer to the many decisions of our own courts. One of the most interesting historical sketches of the law on this subject is found in the opinion by Judge Allison in the case of Hart *v.* Hart, 14 Phila. 352.

After a most careful consideration of the testimony and having full regard of the interest and right of the parent in the child, we feel that the welfare of the child, which is paramount to the interest and right of the parent, will be best promoted by leaving it for the present in the custody of the grandparents, with the right in the father to visit the child at all reasonable times.

### Order.

And now, May 1, 1922, on consideration of the testimony taken in the above entitled matter and the argument of counsel, it is ordered and decreed that the child, Helen Frances Ludlam, be left in the custody of its grandparents, George Miller and Harriet M. Miller, without cost or expense of maintenance to the father, Edward D. Ludlam, and that the father shall have the right to visit the child at the home of the grandparents at all reasonable times, giving to them reasonable information of his coming, and that upon such visits each shall receive and give, from and to the other, due and proper consideration and respect, and the child shall not be influenced against the parent or grandparents by either one party or the other.

It is further ordered that this writ of *habeas corpus* shall stand over as a pending writ, subject always to such further order as may hereafter be adjudged by the court to be right and proper in relation to the custody of said minor. The said parties are to pay their own costs.

From William Jenkins Wilcox, Harrisburg, Pa.